# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 26, 2021

Lyle W. Cayce
Clerk

No. 20-10836

Jessica Ward, *also known as* Jessica Lynn Ward,

*Petitioner—Appellant*,

*versus*

United States of America,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:20-CV-731

Before Jones, Southwick, and Engelhardt, *Circuit Judges*.
Leslie H. Southwick, *Circuit Judge*:

Jessica Ward, who is serving a 200-month sentence, filed a motion for compassionate release. The district court denied the motion. We must decide whether a district court may use the sentencing factors set forth in 18 U.S.C. § 3553(a) to reject compassionate release when the Government fails to present a Section 3553(a) argument. We conclude that the district court did not err. AFFIRMED.

No. 20-10836

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2017, Ward pled guilty to a one-count information charging her with conspiracy to possess with intent to distribute 50 grams or more of methamphetamine. *See* 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). In February 2018, the district court sentenced Ward to 200 months of imprisonment to be followed by 5 years of supervised release. Ward did not file a direct appeal, but she later unsuccessfully sought post-conviction relief based on alleged ineffective assistance of counsel. *See United States v. Ward*, 2020 WL 6194457, at *1 (5th Cir. Mar. 2, 2020) (No. 19-10468) (denying certificate of appealability).

In March 2020, through counsel, Ward sent a request for compassionate release to the warden of her facility. She asserted that her kidney failure, other medical problems, and vulnerability to COVID-19 constituted an extraordinary and compelling reason for a sentence reduction. In May 2020, the Bureau of Prisons denied her request because Ward's "medical condition has not been determined to be terminal within eighteen months nor end of life trajectory."

In July 2020, after exhausting her administrative remedies,[1] Ward filed a motion in the United States District Court, Northern District of Texas, seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A). Ward asserted that her chronic kidney failure, other medical conditions, and the COVID-19 pandemic constituted "extraordinary and compelling" reasons for compassionate release. Given her medical conditions, Ward contended that she was particularly susceptible to "grave illness or death if infected by COVID-19." She also contended that compassionate release

---

[1] Ward exhausted her administrative remedies because the Bureau of Prisons did not respond to her initial request within 30 days. *See* 18 U.S.C. § 3582(c)(1)(A).

would be consistent with Section 1B1.13 of the Sentencing Guidelines, and that Section 3553(a) factors favor a reduction. She requested a reduction either to time served or to a term of home confinement.

Ward filed with the motion her proof of exhaustion, her medical records, and an expert's report that her kidney disease put her "at higher risk for developing severe illness, kidney failure, or death if she becomes infected with the coronavirus SARS-CoV-2 (Covid-19)."

At the request of the district court, the Government filed an opposition that made two arguments. The first was that Ward's "COVID-related concerns do not constitute 'extraordinary and compelling reasons' under the compassionate-release statute." Relying on Section 1B1.13 of the Sentencing Guidelines, the Government argued that COVID-19 is not a stand-alone basis for a sentence reduction. The second argument was that the Bureau of Prisons was adequately managing the pandemic and that judicial intervention was unnecessary. The Government never mentioned Ward's kidney condition or the Section 3553(a) factors.

Ward filed a reply. She emphasized that the Government failed to respond to her kidney-disease argument and failed to argue that the sentencing factors counseled against a reduction. She asked the court to "consider these matters conceded" and to grant her motion. The Government filed a sur-reply which acknowledged that, while "COVID-19 is a very serious matter for the Country, . . . it should not be used as a get-out-of-jail-free card and it should not serve as a fulcrum for catapulting everyone with an infirmity out of prison."

The district court denied Ward's motion for two independent reasons. The first was that Ward failed to show an "extraordinary and compelling reason" for a reduction. It discussed her kidney disease, but

never mentioned COVID-19.[2]   The second reason was that the Section 3553(a) factors did not support a reduction.[3]   The district court concluded that Ward's release "would not be in the interest of justice."   Ward timely appealed.

## DISCUSSION

We review the denial of a motion for compassionate release for abuse of discretion.  *United States v. Cooper*, 996 F.3d 283, 286 (5th Cir. 2021).  A court abuses its discretion when "it bases its decision on an error of law or a clearly erroneous assessment of the evidence."  *Id.* (quoting *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020)).

The sole issue in this appeal is whether the district court abused its discretion by denying Ward's motion based on arguments not advanced by the Government.  Ward contends that the district court impermissibly relied on two "waived" arguments and violated the "principle of party presentation."  *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020).  The Government argues that the district court merely engaged in

---

[2] As the court explained:

The court is not persuaded that an extraordinary and compelling reason exists in movant's case.  In particular, movant's expert opines that she has stage 3 chronic kidney disease, but does not aver that she has any particular life expectancy.  The warden denied her request for compassionate release because movant's medical condition had not been determined to be terminal within 18 months nor end of life trajectory.

[3] The court considered the length of Ward's term of imprisonment, her managerial role in the crime of conviction, the quantity of methamphetamine involved, her criminal history, and the danger of her continued fraudulent conduct upon release.

No. 20-10836

analysis required by the statute and challenges Ward's argument that it never raised an argument related to Ward's kidney condition.

We begin with a brief background of the compassionate release statute. *See* 18 U.S.C. § 3582(c)(1)(a). We then examine whether the district court abused its discretion in adopting reasoning not argued by a party.

Compassionate release is one of a few exceptions to the general rule that "court[s] may not modify a term of imprisonment once it has been imposed." *See* 18 U.S.C. § 3582(c). Until the passage of the First Step Act, only the Bureau of Prisons could file a motion for compassionate release. *See United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021). The First Step Act amended Section 3582(c)(1)(A) to allow defendants to file compassionate-release motions after exhausting administrative remedies. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). As relevant here, the compassionate-release statute now provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [S]ection 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). We summarize its key requirements.

No. 20-10836

At the outset, a defendant must exhaust her administrative remedies before filing a motion for compassionate release. *Id.* Here, it is undisputed that Ward exhausted her administrative remedies, as the Bureau of Prisons failed to respond to her initial request within 30 days.

A defendant who has exhausted her administrative remedies is eligible for a sentence reduction if the district court finds: (1) that one of the two conditions set forth in Section 3582(c)(1)(A) is met (here, it must find that "extraordinary and compelling reasons warrant such a reduction"); and (2) "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* If the district court makes those two findings, then the court "may" reduce the defendant's sentence "after considering the factors set forth in [S]ection 3553(a) to the extent that they are applicable." *Id.* The district court has discretion to deny compassionate release if the Section 3553(a) factors counsel against a reduction. *See, e.g.*, *United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020).

The Government made two arguments in opposition to Ward's motion. First, it argued that Ward's "COVID-19 related concerns" are not "extraordinary and compelling reasons" for compassionate release. Second, it also asserted that the Bureau of Prisons was adequately managing the pandemic within federal prisons. The district court accepted that Ward's kidney disease was not an "extraordinary and compelling reason," and it further found the Section 3553(a) factors did not support release.

We discuss first the district court's holding that Ward failed to present an "extraordinary and compelling" reason for a reduction. The district court discussed Section 1B1.13 of the Guidelines, which lists certain medical conditions and family circumstances as "extraordinary and compelling" in a policy statement. After the district court's decision, though, we held that Section 1B1.13 is "inapplicable" to motions for

compassionate release filed by defendants. *Shkambi*, 993 F.3d at 392–93. As a result, a district court errs by treating Section 1B1.13 as binding. *Cooper*, 996 F.3d at 289.

In this case, the district court did not explicitly state that it considered Section 1B1.13 to bind its determination, but it relied on Section 1B1.13 exclusively to delineate the contours of what constitutes an "extraordinary and compelling reason" before concluding that Ward failed to present one. Accordingly, this part of the district court's analysis is not a basis to affirm its denial.

What remains is the district court's alternative determination that, even if Ward was otherwise eligible for a reduction, her motion should be denied based on the Section 3553(a) factors. The Government made no mention of the Section 3553(a) factors in its response to Ward's motion. Because of that, Ward contends that the Government "waived" reliance on the Section 3553(a) factors and that the court violated the principle of party presentation by relying on the factors as a basis for denial.

In examining for error, we begin with the proposition that motions for compassionate release are inherently discretionary. By statute, a district court "may" reduce an otherwise-eligible defendant's sentence "after considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Further, we give deference to the district court's determination because a "sentencing judge is in a superior position to find facts and judge their import under [Section] 3553(a) in the individual case." *Chambliss*, 948 F.3d at 693 (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Altogether, the district court is obligated to consider the Section 3553(a) factors before deciding whether to order compassionate release, and we give deference to the district court when it does. We see no reason to hold that the Government's failure to make arguments about the

factors cancels the statutory obligation to consider them. Indeed, consideration of the factors is as needed to justify granting compassionate relief as it is to denying release.

Second, the burden falls on the defendant to "convince the district judge to exercise discretion to grant the motion [for compassionate release] after considering the [Section] 3553(a) factors." *Shkambi*, 993 F.3d at 392. If the defendant fails to convince the district court to exercise its discretion, such as in this case, then the court may deny the motion, assuming it "provide[s] specific factual reasons, including but not limited to due consideration of the [Section] 3553(a) factors." *Chambliss*, 948 F.3d at 693. This is true regardless of whether the Government raises the Section 3553(a) factors. Indeed, we agree with an unpublished opinion of this court that a district court may in proper circumstances deny a motion for compassionate release without even requesting a response from the Government. *See United States v. Smith*, 828 F. App'x 215, 216 & n.1 (5th Cir. 2020). Obviously, in such a case there are no opposing arguments of any kind.

Third, the district court's *duty* to consider the Section 3553(a) factors at original sentencing supports the conclusion that it has *authority* to consider the factors, even if *sua sponte*, during sentence-modification proceedings. A judge imposing an original sentence "*must always* take account of certain statutory factors," *i.e.*, the Section 3553(a) factors. *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1963 (2018) (emphasis added). Sentence-modification proceedings, such as Section 3582(c)(1) or Section 3582(c)(2) proceedings, are limited exceptions to the general rule that a sentence "may not be modified by a district court." *See Dillon v. United States*, 560 U.S. 817, 824 (2010). The Supreme Court has not held but only assumed "for argument's sake" that "district courts have equivalent duties when initially sentencing a defendant and when later modifying the sentence." *Chavez-*

*Meza*, 138 S. Ct. at 1965.    Flexibility and discretion from rigid rules is particularly applicable when there is a motion to modify a sentence.

Our analysis so far does not constitute a holding that the Government cannot forfeit or waive some arguments against compassionate release.  For example, the administrative-exhaustion requirement is a non-jurisdictional but "mandatory" claim-processing rule.  *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020).  Like other claim-processing rules, the Government must "properly raise[] the rule" before it will be enforced.  *Id.*  Similarly, "an objection based on a mandatory claim-processing rule may be forfeited 'if the party asserting the rule waits too long to raise the point.'"  *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005)).

To support her assertion that the Government waived reliance on the Section 3553(a) factors, Ward cites a case in which we treated as "abandoned" arguments that were not properly presented in the opening brief by an appellant.  *United States v. Lindell*, 881 F.2d 1313, 1325 (5th Cir. 1989).  An appellate brief, though, is a place to challenge or support another court's ruling.  We do not see the connection between that principle and the Government's ability to block a district court's consideration of the Section 3553(a) factors by a failure to rely on those factors in its opposition.

Ward also refers to the "principle of party presentation" recently described by the Supreme Court.  *Sineneng-Smith*, 140 S. Ct. at 1579.  Under this principle, courts ordinarily "rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."  *Id.* (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)).  "[A]s a general rule," the Court explained, "our system 'is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument

entitling them to relief.'" *Id.* (quoting *Castro v. United States*, 540 U.S. 375, 386 (Scalia, J., concurring in part and in judgment)).  In *Sineneng-Smith*, the Supreme Court held that the Ninth Circuit abused its discretion by conducting a "takeover of the appeal."  *Id.* at 1581.  In a defendant's appeal that challenged her statute of conviction, the Ninth Circuit panel appointed three *amici* to brief three wholly different theories of relief that the defendant never herself raised.   *Id.* at 1578.  The Court held that the Ninth Circuit "departed so drastically from the principle of party presentation as to constitute an abuse of discretion."  *Id.*

An appellate court's interjection of three wholly different legal theories in favor of constitutional relief is hardly comparable to a district court's complying, unbidden, with its statutory obligation to act only after considering certain matters.   We find no authority that the Government's failure to brief the Section 3553(a) factors means it is error for a district court to apply them.

AFFIRMED.